**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL PARKS CONSERVATION
ASSOCIATION, ET AL.,

                *Plaintiffs*,

     v.

FEDERAL AVIATION
ADMINISTRATION, ET AL.,

                *Defendants*,

     and

CAMDEN COUNTY, GEORGIA,

                *Defendant-Intervenor*.

No. 22-cv-01408 (RDM)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

    A.    The FAA's Environmental Review and Licensing ................................................. 2

    B.    Intervening Factual Developments ...................................................................... 4

    C.    Procedural History .............................................................................................. 6

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ........................................................................................................... 7

    I.    Intervening Events Have Rendered Plaintiffs' Allegations of Environmental Harm Too Speculative to Support Standing ...................... 8

    II.    Plaintiffs' Allegations of Economic Harms Are Insufficient to Convey Standing .................................................................................... 12

        a.    Plaintiffs' Allegations of Past Harms Cannot Support Prospective Relief, and Their Allegations of Future Economic Harms are Too Speculative ........................................... 12

        b.    Plaintiffs' Allegations Indicate the County's Plans for the Spaceport, As Opposed to the FAA's Issuance of the Final EIS and License, Caused Their Alleged Economic Harms ......... 16

    III.    Even if Adequately Alleged, Plaintiffs' Claims of Economic Injury Fall Outside the Zone of Interest of the Statutes Under Which They Seek Relief ................................................................................................ 19

    IV.    Because Development of Spaceport Camden is Uncertain, Prudential Concerns Also Render the Case Unripe .................................. 22

CONCLUSION ....................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Garner,*
   387 U.S. 136 (1967)..................................................................... 23, 24

*Air Excursions LLC v. Yellen,*
   66 F.4th 272 (D.C. Cir. 2023) ....................................................... 13, 14

*Am. Butterfly Ass'n v. Wolf,*
   977 F.3d 1244 (D.C. Cir. 2020) ........................................................... 8

*Am. Petroleum Inst. v. EPA,*
   683 F.3d 382 (D.C. Cir. 2012) ........................................................... 22

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ...................................................... 10, 19

*Atl. States Legal Found. v. EPA,*
   325 F.3d 281 (D.C. Cir. 2003) ........................................................... 23

*Baker v. Carr,*
   369 U.S. 186 (1962)............................................................................ 6

*California v. Trump,*
   613 F. Supp. 3d 231 (D.D.C. 2020) ................................................... 12

*Camden Cnty. v. Sweatt,*
   883 S.E.2d 827 (Ga. 2023) .............................................................. 4, 5

*Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.,*
   538 F. Supp. 2d 24 (D.D.C. 2008) ..................................................... 14

*City of Dania Beach v. FAA,*
   485 F.3d 1181 (D.C. Cir. 2007) ......................................................... 19

*City of Fall River v. FERC,*
   507 F.3d 1 (1st Cir. 2007)................................................................. 25

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013).......................................................... 9, 15, 16

*Coal. for Underground Expansion v. Mineta,*
   333 F.3d 193 (D.C. Cir. 2003) ............................................................. 7

*Copper & Brass Fabricators Council, Inc. v. Dep't of the Treasury,*
   679 F.2d 951 (D.C. Cir. 1982) ........................................................... 22

*Covad Commc'ns Co. v. Bell Atl. Corp.,*
   407 F.3d 1220 (D.C. Cir. 2005) ........................................................... 4

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs,*
   No. 19-cv-58, 2022 WL 202893 (S.D. Ga. Jan. 21, 2022) .................... 21

*Ctr. for Biological Diversity v. EPA*,
   861 F.3d 174 (D.C. Cir. 2017) ................................................................. 12

*Ctr. for L. & Educ. v. U.S. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) .............................................................. 17

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*,
   85 F. Supp. 3d 250 (D.D.C. 2015) ......................................................... 24

*Democracy Forward Found. v. White House Office of Am. Innovation*,
   356 F. Supp. 3d 61 (D.D.C. 2019) ............................................................ 4

*Devia v. Nuclear Regul. Comm'n*,
   492 F.3d 421 (D.C. Cir. 2007) ................................................. 23, 24, 25

*Eagle Found. Inc. v. Dole*,
   813 F.2d 798 (7th Cir. 1987) ................................................................ 20

*Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*,
   153 F. Supp. 3d 338 (D.D.C. 2016) ....................................................... 19

*Exxon Mobil Corp. v. FERC*,
   501 F.3d 204 (D.C. Cir. 2007) ................................................................. 7

*Fla. Audubon Soc'y v. Bentsen*,
   94 F.3d 658 (D.C. Cir. 1996) ........................................................... 17, 18

*ForestKeeper v. Elliott*,
   50 F. Supp. 3d 1371 (E.D. Cal. 2014) ................................................... 23

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ................................................................. 8

*Friends of Animals v. Pendley*,
   523 F. Supp. 3d 39 (D.D.C. 2021) ......................................................... 24

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
   514 F. Supp. 3d 290 (D.D.C. 2021) ....................................................... 22

*Garcia v. Acosta*,
   393 F. Supp. 3d 93 (D.D.C. 2019) ........................................................... 7

*Gulf Restoration Network, Inc. v. Nat'l Marine Fisheries Serv.*,
   730 F. Supp. 2d 157 (D.D.C. 2010) ....................................................... 24

*Gunpowder Riverkeeper v. FERC*,
   807 F.3d 267 (D.C. Cir. 2015) ......................................................... 19, 20

*Hemp Indus. Ass'n v. DEA*,
   36 F.4th 278 (D.C. Cir. 2022) ............................................................... 13

*Holy Cross Neighborhood Ass'n v. U.S. Army Corps of Eng'rs*,
   774 F. Supp. 2d 806 (E.D. La. 2011) ..................................................... 25

*Indian River Cnty. v. Rogoff*,
 110 F. Supp. 3d 59 (D.D.C. 2015) ........................................................ 19

*Kokkonen v. Guardian Life Ins. Co.*,
 511 U.S. 375 (1994) ............................................................................... 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) ............................................................................. 19

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ........................................................................... 7, 8

*Mendoza v. Perez*,
 754 F.3d 1002 (D.C. Cir. 2014) ........................................................... 21

*Moore v. Robbins*,
 24 F. Supp. 3d 88 (D.D.C. 2014) ........................................................... 4

*N.Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior*,
 341 F.3d 112 (2d. Cir. 2003) ............................................................... 21

*N.Y. Regional Interconnect, Inc. v. FERC*,
 634 F.3d 581 (D.C. Cir. 2011) ............................................................. 16

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
 417 F.3d 1272 (D.C. Cir. 2005) ............................................................. 6

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
 538 U.S. 803 (2003) ............................................................................. 22

*Nat'l Treasury Emps. Union v. United States*,
 101 F.3d 1423 (D.C. Cir. 1996) ........................................................... 22

*Nat'l Wildlife Fd'n v. U.S. Army Corps of Eng'rs*,
 170 F. Supp. 3d 6 (D.D.C. 2016) ......................................................... 18

*New Hanover Twp. v. U.S. Army Corps of Eng'rs*,
 992 F.2d 470 (3d. Cir. 1993) ............................................................... 25

*Pharm. Rsch. Mfrs. of Am. v. Dep't of Health & Human Servs.*,
 No. 20-cv-3402 (TJK), 2023 WL 1795644 (D.D.C. Feb. 6, 2023) .................... 10, 12

*POET Biorefining, LLC v. EPA*,
 970 F.3d 392 (D.C. Cir. 2020) ............................................................... 9

*Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*,
 129 F. Supp. 2d 551 (W.D.N.Y. 2000) ................................................. 20

*Presidio Golf Club v. Nat'l Park Serv.*,
 155 F.3d 1153 (9th Cir. 1998) ............................................................. 20

*R.J. Reynolds Tobacco Corp. v. U.S. FDA*,
 810 F.3d 827 (D.C. Cir. 2016) ............................................................... 9

*Rosebud Sioux Tribe v. McDivitt*,
   286 F.3d 1031 (8th Cir. 2002) ................................................................................ 20

*Save Long Beach Island v. U.S. Dep't of Interior*,
   No. 22-cv-55 (DLF), 2023 WL 2424608 (D.D.C. Mar. 9, 2023) ........................... 6, 7

*Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*,
   No. 17-cv-4-FL, 2017 WL 3908093 (E.D.N.C. Sept. 15, 2017) ............................ 20

*Schmidt v. U.S. Capitol Police Bd.*,
   826 F. Supp. 2d 59 (D.D.C. 2011) ........................................................................... 7

*Sierra Club v. FERC*,
   827 F.3d 36 (D.C. Cir. 2016) .................................................................................. 17

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .................................................................................................... 6

*Summers v. Earth Island Inst.*,
   555 U.S. 488, (2009) ............................................................................................... 12

*Texas v. United States*,
   523 U.S. 296 (1998) .................................................................................................. 9

*Toilet Goods Ass'n v. Gardner*,
   387 U.S. 158 (1967) ................................................................................................ 23

*Viasat, Inc. v. FCC*,
   47 F.4th 769 (D.C. Cir. 2022) ........................................................................... 15, 20

*Wade v. Dole*,
   631 F. Supp. 1100 (N.D. Ill. 1986) ........................................................................ 20

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ............................................................................... 17

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016) ........................................................................... 13, 15

**Statutes**

16 U.S.C. § 459i ................................................................................................................ 1

42 U.S.C. §§ 4321-4370m-12 ........................................................................................... 1

49 U.S.C. § 303(c) ............................................................................................................ 1

51 U.S.C. § 50901 ............................................................................................................. 1

51 U.S.C. § 50901(b) ...................................................................................................... 22

51 U.S.C. § 50901-23 ....................................................................................................... 2

54 U.S.C. § 100101 ........................................................................................................... 1

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................ 6

**Regulations**

14 C.F.R. § 413.3(b)(2) ................................................................................................... 2

14 C.F.R. § 420.17 .......................................................................................................... 2

14 C.F.R. § 420.47(b) ................................................................................................... 11

14 C.F.R. § 450.3(a) ....................................................................................................... 3

## INTRODUCTION

Plaintiffs challenge the Federal Aviation Administration's ("FAA") issuance of a license to Camden County, Georgia for operation of a commercial spaceport ("Spaceport Camden") as well as the sufficiency of the FAA's review of the environmental effects that would result from development and operation of the Spaceport. But, as Plaintiffs themselves admit, it is now highly uncertain whether Spaceport Camden will ever be developed, much less operational, given that a recent referendum stripped the Camden County Board of Commissioners of its authority to purchase the land identified as the site for the Spaceport. Because control of the property by the County is a necessary condition to the FAA license—and, indeed, a prerequisite to proceeding with development of the Spaceport at all—it is pure speculation that any of the environmental harms alleged in the Complaint will in fact materialize. As such, Plaintiffs' claims are both constitutionally and prudentially unripe, and the Court should accordingly dismiss the lawsuit. Similarly, Plaintiffs' alleged economic harms are too speculative, and ultimately stem from the County's prior (and continued) intention to pursue the Spaceport Project, rather than any action by FAA, such that the true relief they seek is outside the scope of this lawsuit. Moreover, Plaintiffs also lack standing because economic harms are outside the zone of interest of the statutes under which Plaintiffs bring claims—the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370m-12, the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, *et seq*., Department of Transportation Act Section 4(f) ("Section 4(f)"), 49 U.S.C. § 303(c), the Cumberland Island National Seashore Enabling Act, 16 U.S.C. § 459i, and the Commercial Space Launch Act ("CSLA"), 51 U.S.C. § 50901, *et seq*.

## FACTUAL BACKGROUND

**A.  The FAA's Environmental Review and Licensing**

In early 2012 Spaceport Camden was first proposed by the Camden County Board of Commissioners to sit on approximately 11,800 acres of property made up of two parcels, one currently owned by the Union Carbide Corporation ("Union Carbide"), and one owned by Bayer CropScience L.P. ("Bayer").  Am. Compl. ¶¶ 1, 99 (ECF No. 25).  If operational, Spaceport Camden would provide commercial launch operators with a site at which to conduct launches—if licensed by the FAA—of certain small orbital vehicles.  *Id.* ¶ 104.  Camden County proposed to obtain the land for the Spaceport through execution of an option contract with Union Carbide.  Ex. A, UCC-Camden County Option Contract (2015).[1]

Pursuant to its statutory authorities, *see, e.g.*, 51 U.S.C. §§ 50901-23, the FAA prescribes requirements for the launch and re-entry of most commercial vehicles and the operation of commercial launch sites.  Relevant here, an entity that wishes to "[o]perate a launch site within the United States," 14 C.F.R. § 413.3(b)(2), must meet the requirements set out in 14 C.F.R. Part 420, including satisfying various environmental and technical standards aimed at protecting public health and safety, the safety of property, and U.S. foreign policy and national security interests.  *See* 14 C.F.R. § 420.17 (summarizing bases for issuance of a launch site operator

---

[1]     It is unclear if the County has attempted to obtain the Bayer property; it appears that Bayer sold its parcel in early 2022.  *See* Ex. B, Schneider Geospatial, LLC, Camden Cnty., GA Property Record, Parcel No. 155001A at 2; *see also, e.g.*, Mary Landers, *Camden County Courts Private Investors for Spaceport*, The Georgia Current (Apr. 12, 2022), *available at* https://thecurrentga.org/2022/04/12/camden-county-courts-private-investors-for-spaceport/ ("Property records indicate Organic Capital Fund LLC bought the nearly 8,000-acre property from [Bayer] for $1 on Feb. 25, 2022.").

license).[2]  The County first submitted a license application on January 29, 2019.  Am. Compl. ¶

134.  That license application was subsequently revised and re-submitted on January 14, 2020.

*Id.* ¶ 151.

As part of its consideration of the County's application for a launch site operator license

the FAA also conducted a review of the County's proposal under NEPA, as well as a historic

preservation consultation under Section 4(f) and the NHPA.  *Id.* ¶¶ 117 (citing 80 Fed. Reg.

68,893 (Nov. 6, 2015)), 192, 207.  Pursuant to that process the FAA issued a draft Environmental

Impact Statement ("EIS") on March 16, 2018, *id.* ¶ 123, and, following solicitation and

consideration of public comments, published a Final EIS on June 17, 2021.  *Id.* ¶ 185.[3]

The FAA ultimately issued a license on December 20, 2021, along with a Record of

Decision ("ROD"), Ex. C, ROD (Dec. 20, 2021), a written re-evaluation of the draft EIS, and a

NHPA Section 106 Programmatic Agreement[4].  *Id.* ¶ 191.  Specifically relevant here, the license

is valid for five years and requires the County to "control access to the parcel identified as

[Bayer] and [Union Carbide] land by purchasing, leasing, or executing a site use agreement."

Ex. D, License No. LSO 21-020 (Dec. 20, 2021) at 2.  In addition, the license prohibits the

County from "sign[ing] an agreement with a potential launch operator to launch a launch vehicle

---

[2]      In addition, to launch a vehicle a purported operator must satisfy the independent
requirements in 14 C.F.R. Part 450.  *See* 14 C.F.R. § 450.3(a) ("[A]uthoriz[ing] a licensee to
conduct one or more launches or reentries using the same vehicle or family of vehicles.").  A
vehicle operator license covers all activities beginning with the commencement of "hazardous
pre-flight operations . . . at a U.S. launch site that may pose a threat to the public."  *Id.* §
450.3(b)(1).  In other words, actual vehicle operation typically requires (and would require here)
application for, and issuance of, a separate license under Part 450.

[3]      *Available at* https://www.faa.gov/space/environmental/nepa_docs/camden_eis.

[4]      *Available at* https://www.faa.gov/sites/faa.gov/files/2022-
04/Spaceport_Camden_Executed_PA.pdf.

from Spaceport Camden until Camden County provides a purchase, lease, or site use agreement acceptable to the [FAA]." *Id*. Further, the County must also "comply with the mitigation measures outlined in the Record of Decision for the Final Spaceport Camden Environmental Impact Statement." *Id*. at ¶ 4.

The ROD, in turn, provides that "[t]he County would construct Spaceport Camden approximately 11.5 miles due east of the City of Woodbine, Georgia, 5 miles due west of Cumberland Island National Seashore, less than 1 nautical mile from the Satilla River, and 6.7 nautical miles from the Atlantic Ocean." Ex. C at 3. It also explains that "FAA issuance of a Vehicle Operator License to a potential future launch operator to conduct a launch at Spaceport Camden would require a new environmental review under NEPA specific to that potential Vehicle Operator License and would not be conducted as a Written Re-evaluation of the Spaceport Camden EIS." *Id*. at 5.

## B. Intervening Factual Developments

On December 14, 2021, a number of "registered electors" in Camden County filed a petition seeking a special election for a referendum on whether to repeal the County Board of Commissioners' resolutions approving an option contract for the purchase of the Union Carbide property. *See Camden Cnty. v. Sweatt*, 883 S.E.2d 827, 830 (Ga. 2023)[5]; *see also* Am. Compl. ¶ 235. The County Probate Court granted the petition, and a referendum was held on March 8, 2022, resulting in a vote favoring repeal of the purchase resolutions. *Sweatt*, 883 S.E.2d at 831; *see also* Ex. E, Camden Cnty. Probate Ct. letter to Ga. Sec. of State (Sept. 21, 2022); Am.

---

[5]    "A court may take 'judicial notice of facts on the public record' in other proceedings." *Moore v. Robbins*, 24 F. Supp. 3d 88, 96 n.7 (D.D.C. 2014) (quoting *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). "[J]udicial notice may be taken of government documents available from reliable sources." *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 62 n.2 (D.D.C. 2019).

Compl. ¶ 237.  The County Board challenged the validity of the referendum, and the Georgia Supreme Court ultimately issued an opinion on February 7, 2023 finding, among other things, that "the County's electorate [was authorized] to petition for the repeal of the Resolutions and that [the Probate Court judge] was authorized to consider the Electors' Petition to determine whether it met the requirements under that provision for obtaining a referendum on the issue." *Sweatt*, 883 S.E.2d at 838.  In other words, the Court upheld the validity of the referendum, such that the County Board lacks the authority to proceed as planned by purchasing the property intended as the site of Spaceport Camden.  Am. Compl. ¶¶ 237-38.

In addition, following the results of the 2022 referendum, Union Carbide publicly issued a statement withdrawing from its option contract with Camden County.  Ex. F (May 16, 2022 letter from Union Carbide).  Camden County and Union Carbide subsequently engaged in litigation regarding Union Carbide's refusal to convey the property to the County as originally planned.  *See generally Camden Cnty. v. Union Carbide Corp.*, No. 22-cv-77-LGW-BWC (S.D. Ga. Aug. 19, 2022).  Relevant here, following the Georgia Supreme Court's decision in *Sweatt*, the County filed a notice acknowledging that *Sweatt* was dispositive of its claims for breach of contract against Union Carbide.  Ex. G, Resp. to Def.'s Notice of Suppl. Auth., *Camden Cnty. v. Union Carbide Corp.*, No. 22-77 (S.D. Ga. Feb. 24, 2023), ECF No. 55.  The County currently alleges only a claim of unjust enrichment to recover funds paid to Union Carbide prior to passage of the referendum.  *See* Ex. H, Am. Compl. ¶¶ 30-43, *Camden Cnty. v. Union Carbide Corp.*, No. 22-77 (S.D. Ga. Apr. 17, 2023), ECF No. 58   That lawsuit remains pending.

Finally, on February 24, 2023, the Chairman of the County Board released a statement confirming that the results of the referendum would require the County to "rely solely on a private company or other public entity to own and operate the Spaceport."  Ex. I, Statement of

Chairman Ben L. Casey at 1 (2023).  As Plaintiffs acknowledge, at present, "the County has identified no alternative means to control public access to the Spaceport Camden site."  Am. Compl. ¶ 238.

### C. Procedural History

Plaintiffs filed suit on May 19, 2022.  *See generally* Compl. (ECF No. 1).  On September 8, 2022, the Parties moved to stay the litigation pending a decision in *Sweatt*, ECF No. 19, and the Court granted the request the same day.  *See* Sept. 8, 2022 Minute Order.  Pursuant to the Court's Order, the Parties filed a joint status report on March 9, 2023, detailing their proposal for the litigation, ECF No. 21, and the Court subsequently issued a briefing schedule.  *See* March 10, 2023 Minute Order.

Defendants filed a motion to dismiss on June 23, 2023, ECF No. 23.  In response, Plaintiffs filed the instant First Amended Complaint on July 14, 2023.  ECF No. 25.  On July 23, 2023, the Court entered a Minute Order setting a briefing schedule for Defendants to file a renewed motion to dismiss.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims where the court lacks jurisdiction.  *Baker v. Carr*, 369 U.S. 186, 198 (1962).  Jurisdiction, including standing and ripeness, is a threshold issue that a court must determine before proceeding to the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (citation omitted) (subsequent history omitted)); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir. 2005).  In other words, "[t]o present a justiciable case or controversy, the party invoking federal jurisdiction must demonstrate standing and ripeness, among other requirements."  *Save Long Beach Island v. U.S.*

*Dep't of Interior*, No. 22-cv-55 (DLF), 2023 WL 2424608, at \*3 (D.D.C. Mar. 9, 2023) (citing

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  Motions to dismiss on ripeness

grounds consistently proceed under Rule 12(b)(1) because "'[t]he question of ripeness goes to [ ]

subject matter jurisdiction.'"  *Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007)

(citation omitted).

Plaintiffs bear the burden of establishing standing, *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 561 (1992), and ripeness, *Garcia v. Acosta*, 393 F. Supp. 3d 93, 103 (D.D.C. 2019).  As

such, in evaluating a motion under Rule 12(b)(1), a court "must scrutinize the plaintiff's

allegations more closely . . .  than it would under a motion to dismiss pursuant to Rule 12(b)

(6)."  *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011).  "Also, unlike in

the Rule 12(b)(6) context, a court may consider documents outside the pleadings to evaluate

whether it has jurisdiction . . . ."  *Save Long Beach Island*, 2023 WL 2424608, at \*3; *see also*

*Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (the court may

resolve "disputed facts" when ruling on a motion under Rule 12(b)(1) (citation omitted)).

## **ARGUMENT**

Whether looked at as a constitutional or prudential concern, Plaintiffs' claims are unripe

because Camden County can no longer purchase the land intended as the site of the Spaceport

and any hypothetical, alternative plan to secure control over the site is far too speculative to

presently support this Court's jurisdiction.  *See Garcia*, 393 F. Supp. 3d at 105 ("The ripeness

doctrine subsumes two inquiries: first, the Article III requirement of standing, which requires a

plaintiff to allege *inter alia* an injury-in-fact that is 'imminent' or 'certainly impending,' and,

second, 'prudential reasons for refusing to exercise jurisdiction.'" (citations and alteration

omitted)).  First, as a constitutional matter, Plaintiffs cannot show an imminent risk of

environmental injury given that the alleged harms they detail in the Complaint are unlikely to materialize absent indications that development of Spaceport Camden will proceed.  And Plaintiffs' claims of economic injury are similarly too speculative to support standing for prospective injunctive relief.  Moreover, those claimed economic injuries were caused—if at all—by the County's decision to pursue the Spaceport (and accordingly would be redressed only by a decision from the County to abandon the Project),

Second, as a prudential matter, Plaintiffs' claims fall outside the zone of interest for the statutes under which they seek relief.  And third, Plaintiffs' claims are prudentially unripe because factual developments related to the County's planned acquisition of the site for the Project have rendered it uncertain whether the Project will be abandoned altogether, and, even if the project were to move forward, the harms Plaintiffs complain of would not materialize unless the FAA issued a license to permit launches at the Spaceport.  Viewed through either lens the Court should dismiss, without prejudice, this case for lack of jurisdiction.[6]

## I.       Intervening Events Have Rendered Plaintiffs' Allegations of Environmental Harm Too Speculative to Support Standing.

"Under any theory, 'the irreducible constitutional minimum of standing contains three elements':  (1) the plaintiff must have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) there must exist 'a causal connection between the injury and the conduct complained of'; and (3) it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016) (quoting *Lujan*, 504 U.S. at 560-61).  "Constitutional ripeness is subsumed into the Article III requirement of standing,

---

[6]      *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice").

which requires a petitioner to allege inter alia an injury-in-fact that is 'imminent' or 'certainly impending.'" *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (future injury must be "certainly impending," not just hypothetical, to support Article III standing); *R.J. Reynolds Tobacco Corp. v. U.S. FDA.*, 810 F.3d 827, 830 (D.C. Cir. 2016) ("Both doctrines address the imminence issue, using the same focus on contingencies that may render the risk of harm too slight.").

Plaintiffs' Amended Complaint alleges a variety of injuries stemming from the *operation* of Spaceport Camden.  Those include: (1) impeded access to recreational activities and the Cumberland Island seashore due to closures and access restrictions during launches, Am. Compl. ¶¶ 7-9, 11, 13-15; (2) risk of property damage, including fire, from launch failures, *id*. ¶¶ 10, 26-27; (3) harm to historic and natural resources on Little Cumberland Island from operation of Spaceport Camden, including noise and lights from rocket launches and launch towers, *id*. ¶¶ 10, 13, 24, 42; (4) loss of business and not-for-profit opportunities that depend on seashore access, *id*. ¶¶ 16, 43; and (5) increased risk of personal injury from potential launch mishaps, *id*. ¶¶ 10, 13, 42.  But all these injuries assume—at a minimum—that Spaceport Camden will exist and be operational.

Put plainly, uncertainty regarding whether the Spaceport Camden project will move forward renders Plaintiffs' risks of future harm too uncertain to support Article III standing.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citation omitted)).  Specifically, the results of the referendum have precluded the County from acquiring the property through a purchase agreement.  *See* Ex. I at 1 (statement from

Chairman Casey acknowledging ability to purchase property is foreclosed).  While Camden County may attempt to control the property through other means, whether it would be able and willing to do so is presently unknown.  This is particularly true because County voters have already expressed disapproval for the project and any such attempt by the County would require the agreement of the property owners.  *See Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) . . . ." (citation omitted)).  Indeed, "to avoid stretching the imminence requirement 'beyond its purpose,' and neglecting components of the definition of imminence such as 'immediate' and 'not remote,' the Court must be able to say *something* about a future injury's timing."  *Pharm. Rsch. Mfrs. of Am. v. Dep't of Health & Human Servs.*, No. 20-cv-3402 (TJK), 2023 WL 1795644, at *9 (D.D.C. Feb. 6, 2023) (citation omitted).  Here, however, the timing—or even the possibility—for any acquisition of property by Camden County is unknown.  *See also id.* ("[O]n this record, the Court could only speculate about when such an approval will occur and, more importantly, on what terms.").[7]  Indeed, Plaintiffs acknowledge that the County has thus far failed to identify an alternative means of controlling the property

---

[7]     Moreover, each alleged harm is only realized by the *operation* of the Spaceport, not just publication of the Final EIS and ROD and issuance of the license.  As such, Plaintiffs likely would lack standing even if siting of the Spaceport were more certain.  This is because most of Plaintiffs' purported injuries would only arise from future launch activities.  But the operation of those vehicles is entirely dependent on whether third parties are willing to secure independent licenses for launch operations, and whether the FAA actually grants those licenses.  *See Arpaio*, 797 F.3d at 21.  To this end, Plaintiffs claim that "[t]here is no small lift class launch vehicle in commercial operation with the specifications identified" in the County's license application.  Am. Compl. ¶ 156.

intended for the Spaceport.  Am. Compl. ¶ 238.  As such, claims of standing tied to development of the Spaceport at the current planned location are insufficient.

And if the County chooses to proceed by obtaining a new or different property (because, for example, the owners of the currently-intended property will not consider alternative arrangements for control), Plaintiffs' injuries would be similarly distant given the ROD, Final EIS, and technical analysis on which the license is based all employ location-specific analyses such that they would need to be (at minimum) updated to account for a new location.  For example, the Final EIS maps exclusion zones, rocket launch trajectory, and limited access areas based on the specific planned location of Spaceport Camden and the launch site.  Am. Compl ¶ 107 (citing map of Limited Access Area in Final EIS); *see also, e.g.*, *id.* ¶ 174 (citing debris dispersion map in Final EIS).  A change in location would therefore require the FAA to, at the very least, update those analyses, potentially resulting in changes to the effects that Plaintiffs allege could harm them.  *See* FAA Order 1050.1F § 9-2 (Jul. 16, 2015).[8]  So too, the Final EIS notes that the FAA would need to consider additional environmental review should the County not obtain the Bayer property.[9]  And the license similarly refers to the "use" of the parcel identified as Union Carbide and Bayer land, Ex. D at ¶ 3, such that a change in siting for the project would require modification or re-issuance of the license.  *See* 14 C.F.R. § 420.47(b) (criteria for license modification).

---

[8]      *Available at* https://www.faa.gov/sites/faa.gov/files/about/office_org/headquarters_offices/apl/FAA_Order_1050_1F.pdf

[9]      *See* Final EIS at 5, *available at* https://www.faa.gov/sites/faa.gov/files/2022-04/Vol_1_SCC_FEIS_June2021.pdf

Finally, and to the extent Plaintiffs argue their claims are ripe simply because the Final

EIS and ROD have been issued such that their alleged NEPA violations are actualized, those

arguments are misplaced.  Standing cannot be established by "deprivation of a procedural right

without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*."

*Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  Thus, for example, "[t]here is no doubt

. . . that a plaintiff that is able to establish that an agency failed to comply with the notice and

comment procedures of the APA would, nonetheless, have no recourse in an Article III court

absent a showing that it suffered or will suffer a concrete injury as a result of policy produced

through the allegedly flawed process."  *California v. Trump*, 613 F. Supp. 3d 231, 243 (D.D.C.

2020).  Indeed, "the cognizability of procedural injuries also depends on whether Plaintiffs have

shown a 'substantial probability' of future harm."  *Pharm. Research Mfrs. of Am.*, 2023 WL

1795644, at *12 (quoting *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 184-85 (D.C. Cir.

2017)).  Here, and for the reasons discussed above, Plaintiffs have failed to show such a

likelihood of future harm.

## II.   Plaintiffs' Allegations of Economic Harms Are Insufficient to Convey Standing.

### a.   Plaintiffs' Allegations of Past Harms Cannot Support Prospective Relief, and Their Allegations of Future Economic Harms are Too Speculative.

In the Amended Complaint, Plaintiff Little Cumberland Island Homes Association, Inc.

("LCIHA") adds vague and speculative allegations about past, present, and future economic

harm resulting from the Spaceport, and Plaintiff One Hundred Miles ("OHM") alleges future

economic harm from the Spaceport.  None are sufficient to establish standing.

Specifically, LCIHA claims that both it and "its members have suffered and continue to

suffer economic harm as a result of Spaceport Camden and the FAA's decision to issue the

License" because there has been "a material negative impact on the value of property owned by

LCIHA and its shareholders."  Am. Compl. ¶¶ 30-31.  LCIHA speculates that this harm stems

from "[t]he prospect of rockets being launched from Spaceport Camden."  *Id.* ¶ 30.  More

specifically, LCIHA notes that property prices decreased beginning in 2013, the year after the

County announced its intention to pursue the Spaceport Project.  *Id.* ¶ 33.

      In support of this claim, LCIHA points to "an increase in the number of properties

offered for sale on Little Cumberland Island," which "coincide[d]" with "Spaceport Camden and

FAA's decision to issue the License," *id.* ¶ 34, and a decrease in the average sale price of

properties on the Island when compared with other coastal communities.  *See id.* ¶ 32.

      These allegations are insufficient to establish standing.  As an initial matter, LCIHA's

allegations of past economic harm are irrelevant because a plaintiff "may not rest on past injury"

to establish standing for "prospective declaratory and injunctive relief."  *Williams v. Lew*, 819

F.3d 466, 472 (D.C. Cir. 2016) (citation omitted).  And LCIHA's allegations of ongoing or

future injury are similarly unhelpful.  LCIHA appears to allege that issuance of the License,

combined, in some vague way, with uncertainty as to whether a Spaceport will be constructed

and, if so, where and under what conditions, is currently negatively impacting home values and

will continue to do so.  *See* Am. Compl. ¶¶ 30, 35.  This theory, which rests on "broad-based

market effects stemming from regulatory uncertainty," cannot establish standing as it is

"quintessentially conjectural."  *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 292 (D.C. Cir. 2022).

Indeed, the decrease in home prices on Little Cumberland Island relative to other coastal

communities could be due to factors completely unrelated to the uncertainty around the

Spaceport, much less the issuance of the License itself.  *See Air Excursions LLC v. Yellen*, 66

F.4th 272, 278 (D.C. Cir. 2023) (holding that plaintiff failed to establish standing when an

activity independent of the complained of agency action could have caused plaintiff's alleged injury).

In fact, the only allegation affirmatively linking the decrease in home prices to the License is the conjecture of a local real estate agent who claimed that "almost every potential buyer of property on Little Cumberland Island . . . express[es] concerns about the impacts of Spaceport Camden." Am. Compl. ¶ 35; *see also id.* ¶ 30 (plaintiffs similarly express "concern" over impact of launches from Spaceport Camden). But allegations that potential buyers are "expressing concern" about the Spaceport is not the same as plausibly alleging that LCIHA will be injured because the *License* is causing and will continue to cause housing prices to fall. *See Air Excursions LLC*, 66 F.4th at 278 (holding that plaintiff failed to establish standing even though its "theory is possible" because "[t]he plausibility standard requires more than a sheer possibility" (quotations and citation omitted)); *see also Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.*, 538 F. Supp. 2d 24, 31 (D.D.C. 2008) (holding that plaintiff did not establish standing when its allegations "only establishe[d] a probability that injury will occur – which does not quite demonstrate that harm is 'certainly impending'" (citation omitted)). Without plausible allegations, LCIHA has not alleged an injury sufficient to establish standing.

And setting aside the sufficiency of its allegations, LCIHA fails to establish standing for three additional reasons. First, LCIHA's alleged injury is not certainly impending because it relies on a series of contingencies. For LCIHA to be injured: (1) residents of Little Cumberland Island must want to sell their homes; (2) people will have to be interested in purchasing those homes; and (3) those people must, because of the issuance of the License (as opposed to other Spaceport-related concerns), either pass on buying the home or only be willing to pay a lower price. Because none of these contingencies may come to pass, LCIHA's claimed future injury is

14

too speculative to support standing.  *See Viasat, Inc. v. FCC*, 47 F.4th 769, 779 (D.C. Cir. 2022) (holding, in a lawsuit alleging that FCC violated NEPA, that plaintiff lacked standing because its allegations of future harm were based on "too many unlikely contingencies").  Second, and relatedly, LCIHA's alleged injury cannot establish standing because it is based on the future actions of third parties not before the Court, *i.e.*, individuals thinking about purchasing a home on Little Cumberland Island.  *See Clapper*, 568 U.S. at 413 ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."); *see also Williams*, 819 F.3d at 473 ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links, which are predictions of future events (especially future actions to be taken by third parties)." (citation omitted)).

Third, LCIHA's theory of standing is foreclosed by the Supreme Court's decision in *Clapper*.  In *Clapper*, the respondents "contend[ed] that they [were] suffering *present* injury because the risk of" surveillance pursuant to the Foreign Intelligence Surveillance Act "forced them to take costly and burdensome measures to protect the confidentiality of their international communications."  568 U.S. at 402 (emphasis in original).  The Supreme Court rejected this argument, explaining that parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Id.* at 416.  Yet, that is precisely what LCIHA attempts to do here: LCIHA alleges that it has standing because it is taking steps now—such as some of its members selling their homes at lower prices—based on their fear that at some point in the future Camden County will start developing Spaceport Camden.  Am. Compl. ¶ 34.  This attempt at manufacturing standing should be rejected.

And OHM's allegations fare no better.  OHM alleges that one of its members owns a boat, which "[h]e is currently upgrading . . . to allow for easier access to more remote portions of [Cumberland] Island." Am. Compl. ¶ 16.  This individual "is concerned restrictions on access to Cumberland Island, or even uncertainty around access, will cause guests to cancel their reservations and will negatively affect his [room] rental and boat charter businesses." *Id*.  These allegations are insufficient, given they are:  (1) based on self-inflicted injuries grounded in speculation, *see Clapper*, 568 U.S. at 416; and (2) based entirely on hypothetical future events, including decisions by third parties not before this Court, and thus cannot satisfy OHM's burden to establish standing.  *See N.Y. Regional Interconnect, Inc. v. FERC*, 634 F.3d 581, 587 (D.C. Cir. 2011) (holding that plaintiff lacked standing when its "alleged injury rest[ed] upon a hypothetical chain of events, none of which is certain to occur").

### b. Plaintiffs' Allegations Indicate the County's Plans for the Spaceport, As Opposed to the FAA's Issuance of the Final EIS and License, Caused Their Alleged Economic Harms.

Similarly, Plaintiffs fail to establish that federal actions—as opposed to the independent actions of Camden County in announcing and pursuing plans to construct Spaceport Camden— caused their alleged economic injuries.  For example, Plaintiff LCIHA acknowledges its alleged "harms began with the announcement of Spaceport Camden in 2012." Am. Compl. ¶ 31.  So too, LCIHA notes that home prices decreased starting in 2013.  *Id*. ¶ 32.  And LCIHA references a real estate agent who notes the "Spaceport Camden" project, as a whole, is concerning to potential buyers.  *Id*. ¶ 35.  But because these allegations relate to the proposal for the Spaceport more broadly, rather than any specific federal action, they are insufficient to establish the FAA caused Plaintiffs' claimed economic harms, or that Plaintiffs' requested relief would redress their injuries, if any.  Said differently, the root cause of Plaintiffs' displeasure and injuries is the

County's decision to pursue developing Spaceport Camden, not any subsequent federal review associated with that Project.

"Causation, or 'traceability,' examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff . . . ." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citations omitted). "Redressability," on the other hand, "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Id*. at 663-64 (footnote omitted). Said differently, causation looks to the "causal nexus between the agency action and the asserted injury, while redressability centers on the causal connection between the asserted injury and judicial relief." *Ctr. for L. & Educ. v. U.S. Dep't of Educ.*, 396 F.3d 1152, 1160 n.2 (D.C. Cir. 2005).

As to causation, Plaintiffs' own allegations indicate that their claimed economic harms began with the County's decision to pursue Spaceport Camden, not any action by FAA. *See* Am. Compl. ¶¶ 31-32. "[I]n a case alleging a procedural deficiency, 'an adequate causal chain must contain at least two links: one connecting the omitted [procedure] to some substantive government decision that may have been wrongly decided because of the lack of [procedure] and one connecting that substantive decision to the plaintiff's particularized injury." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 306 (D.C. Cir. 2013) (citation omitted). Here, Plaintiffs fail to make the latter connection; instead, their allegations indicate their economic injuries are the result of the County's plans, not any review by the FAA. *Cf. Sierra Club v. FERC*, 827 F.3d 36, 44 (D.C. Cir. 2016) ("[R]egardless of *how* the Commission allegedly failed to discharge its NEPA obligation, that failure led directly to authorization of the [project], which in turn is the source of [plaintiff's] injury" (emphasis in original)). Indeed, that any economic harms "began

17

with the announcement of Spaceport Camden in 2012," Am. Compl. ¶ 31, is fatal to Plaintiffs'

ability to demonstrate "not only that the defendant's acts omitted some procedural requirement,

but also that it is substantially probable that the procedural breach [caused] the essential injury to

the plaintiff's own interest." *Bentsen*, 94 F.3d at 664-65.

Alternatively, looked at through the lens of redressability, Plaintiffs baldly speculate that

"setting aside the FAA decisions and the License" would alleviate their alleged harms. Am.

Compl. ¶ 37. But, by Plaintiffs' own admission, the gravamen of their claimed injury is the

*uncertainty* (and subsequent economic harms) that flowed from the County's decision to pursue

the Spaceport Project. *Id*. ¶¶ 33 (referencing decrease in home prices beginning with

announcement of Spaceport Project in 2012), 99 (noting Spaceport Camden was "proposed by

the Board of Commissioners of Camden County, Georgia"). And that decision long predated the

federal actions Plaintiffs complain of. *Compare id*. ¶ 33, *with id*. ¶ 191 (license and ROD issued

in 2021). As such, and particularly because Plaintiffs allege violations of *procedural*

requirements, *Indian River Cnty. v. U.S. Dep't of Transp.*, 945 F.3d 515, 523 (D.C. Cir. 2019),

any injunctive relief as to the FAA's issuance of a license and environmental review would not

alter the underlying status quo. *Nat'l Wildlife Fd'n v. U.S. Army Corps of Eng'rs*, 170 F. Supp.

3d 6, 14 (D.D.C. 2016) ("Because the conservation groups cannot show that their only injury—

caused by bulkheads that existed when their complaint was filed—will be redressed by the

injunctive and declaratory relief sought, their substantive injury will not support standing to

pursue their NEPA . . . claims."). Said differently, it is too speculative to conclude that a

favorable outcome in this lawsuit would redress Plaintiffs' alleged economic injuries if Camden

County continues to pursue the Spaceport (as it currently has stated it will, *see* Ex. H).[10]  *See*

*Indian River Cnty. v. Rogoff*, 110 F. Supp. 3d 59, 69 (D.D.C. 2015) (explaining that

"demonstrated commitment to a . . . project is an important factor in assessing whether an

injunction against government action would affect the project owner's continuation of the

project" for purposes of assessing redressability).

### III.    Even if Adequately Alleged, Plaintiffs' Claims of Economic Injury Fall Outside the Zone of Interest of the Statutes Under Which They Seek Relief.

And even assuming Plaintiffs' allegations are sufficient, economic harms lie outside the

zone of interest protected by the statutes under which Plaintiffs bring their claims.  *See*

*Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 273 (D.C. Cir. 2015) ("Pursuant to the most

recent teaching of the Supreme Court, we 'presume that a statutory cause of action extends only

to plaintiffs whose interests "fall within the zone of interests protected by the law invoked."'"

(quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).  In

other words, Plaintiffs must show that vindication of economic rights is the purpose of the

statutes under which they bring their claims.

First, as to Plaintiffs' NEPA claims (Counts I & II), "the purpose of NEPA is to integrate

environmental review into the agency decisionmaking process to ensure that 'environmental

values and consequences have been considered during the planning stage of agency actions.'"

*City of Dania Beach, v. FAA*, 485 F.3d 1181, 1185 (D.C. Cir. 2007) (citation omitted).  As such,

---

[10]      While courts have held that the ability to even partially redress a plaintiff's injuries is sufficient to establish standing, *see, e.g.*, *Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*, 153 F. Supp. 3d 338, 341 (D.D.C. 2016), here the fact that Plaintiffs have alleged their harms continue even when the County is presently unable to obtain the site for the Spaceport argues strongly in favor of finding that the County's overarching intention to pursue the Project is the true cause of their alleged injuries.  *See Arpaio*, 797 F.3d at 15 (claims of redressability cannot "contradict acknowledged realities").

the D.C. Circuit has clearly explained that "[t]he zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone." *Gunpowder Riverkeeper*, 807 F.3d at 274; *see also Viasat*, 47 F.4th at 779 (same).

Second, Plaintiffs' claim under the NHPA (Count VI) falls for the same reason.  The "NHPA was enacted to "encourage the public and private preservation and utilization of all usable elements of the Nation's historic built environment."  *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031, 1039 (8th Cir. 2002) (quoting 16 U.S.C. § 470-1(5) (repealed 2014)).  Therefore "economic interests [do not] fall within the zone of interests protected or regulated by NHPA." *Id.*; *see also Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1157-58 (9th Cir. 1998) ("Purely economic interests do not fall within the zone of interests to be protected by [the] NHPA.").

Third, "[t]he purpose of [U.S. Department of Transportation Act] Section 4(f) is to 'preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, or historic sites,' unless an agency demonstrates that there is no feasible and prudent alternative to the use of a Section 4(f) site and that the agency has done all possible planning to minimize harm to the site."  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, No. 17-cv-4-FL, 2017 WL 3908093, at *8 (E.D.N.C. Sept. 15, 2017) (citing 49 U.S.C. §§ 303(a)-(c)); *see also Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 129 F. Supp. 2d 551, 561 (W.D.N.Y. 2000); *Wade v. Dole*, 631 F. Supp. 1100, 1106 (N.D. Ill. 1986) (explaining that Section 4(f) expresses "policy of encouraging wildlife conservation and historic preservation"), *aff'd sub nom Eagle Found. Inc. v. Dole*, 813 F.2d 798 (7th Cir. 1987).  But, as with the NHPA, purely economic interests untethered from any historic preservation purpose are not within the

scope of Section 4(f) (Count IV), and Plaintiffs here do not otherwise link their home values to any such preservation purpose.

Fourth, Plaintiffs' allegations of economic harm are similarly misfit for the Cumberland Island National Seashore Act (Count V). That statute provides that "the seashore shall be permanently preserved in its primitive state" except for certain recreational uses. *Cf. Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, No. 19-cv-58, 2022 WL 202893, at *5 (S.D. Ga. Jan. 21, 2022) (finding "aesthetic interests" in Cumberland Island were sufficient to support standing) (subsequent history omitted); *see, e.g.*, *N.Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior*, 341 F.3d 112, 116-17 (2d. Cir. 2003) (private landowners could not complain of erosion to properties under similar seashore protection statute). Plaintiffs' private economic concerns are not within the scope of the Act.

Finally, for Plaintiffs' standalone APA action (Count III), alleging FAA failed to follow its commercial space launch regulations, the zone of interest inquiry looks to the purpose of the enabling legislation, here the CSLA. *Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) ("Although the plaintiffs here assert a cause of action under the APA, in considering whether plaintiffs are authorized to sue under that law we look to whether they fall within the zone of interests sought to be protected by the substantive statute . . . ."). But the CSLA evidences no legislative intention to benefit the economic standing of homeowners. Instead, the statute explains that Congress intended to: (1) "promote economic growth and entrepreneurial activity through use of the space environment for peaceful purposes"; (2) "encourage the United States private sector to provide launch vehicles, reentry vehicles, and associated services"; and (3) "facilitate the strengthening and expansion of the United States space transportation infrastructure"; subject to (4) sufficient "protect[ions] [for] the public health and safety, safety of

21

property, and national security and foreign policy interests of the United States." 51 U.S.C. §

50901(b).   As such, Plaintiffs' claims that FAA failed to comply with its regulations

implementing the CSLA, Am. Compl. ¶¶ 307-43, cannot proceed based on economic injury

alone.   *See, e.g.*, *Copper & Brass Fabricators Council, Inc. v. Dep't of the Treasury*, 679 F.2d

951, 952-53 (D.C. Cir. 1982) (finding that in enacting legislation to increase the copper content

in the penny "there is no indication that Congress intended this legislation to benefit, protect or

regulate the copper industry" such that trade association lacked standing).

## IV.    Because Development of Spaceport Camden is Uncertain, Prudential Concerns Also Render the Case Unripe.

Similarly, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through

avoidance of premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'"   *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)

(citation omitted).   "[T]he doctrine of prudential ripeness ensures that Article III courts make

decisions only when they have to, and then, only once."   *Am. Petroleum Inst. v. EPA*, 683 F.3d

382, 387 (D.C. Cir. 2012).   This inquiry significantly overlaps with that of constitutional

ripeness.   "For example, a case with no 'certainly impending' injury for the purposes of a

constitutional inquiry is also likely to fail the fitness inquiry for prudential ripeness."   *Friends of*

*Animals v. U.S. Bureau of Land Mgmt.*, 514 F. Supp. 3d 290, 300 (D.D.C. 2021).   Such overlap

is plain here: for the reasons expressed above, Plaintiffs' claims are also prudentially unripe

because withholding judicial review would permit facts (and, potentially, attendant

administrative analysis) to develop that might eliminate the need for future judicial intervention

altogether.   *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir.

1996) ("[T]he usually unspoken element of the rationale underlying the ripeness doctrine: [i]f we do not decide it now, we may never need to.").

In evaluating ripeness courts look to "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Garner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Under the fitness prong of this test, courts must consider "[1] whether [the claim] is 'purely legal, [2] whether consideration of the issue would benefit from a more concrete setting, and [3] whether the agency's action is sufficiently final.'" *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (citation omitted). Under the hardship prong, courts must ask whether the challenged administrative action is likely to have a direct and immediate effect on the "primary conduct" of the plaintiff. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967).

Both factors weigh against finding ripeness here. As to the fitness prong, Plaintiffs' claims are not purely legal, future agency action may supplant the current analysis, and factual issues would undoubtedly benefit from further development. Plaintiffs challenge the FAA's analysis in the Final EIS; the Court's review under NEPA is based on the administrative record, which reflects the specific facts presented by the project. *See ForestKeeper v. Elliott*, 50 F. Supp. 3d 1371, 1387 (E.D. Cal. 2014) (noting "[t]he focal point of the [court's] 'fact-intensive inquiry' [under NEPA] is to determine whether the agency has taken the requisite 'hard look' at the likely environmental consequences of its action"). As such, any change to the location of Spaceport Camden would require the FAA to update its prior NEPA analysis such that the current record may be supplanted by a future review. *See* FAA Order 1050.1F § 9-3. "Put another way, we 'find it too speculative whether' the validity of the . . . license is a problem that 'will ever need solving.'" *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 426 (D.C. Cir. 2007)

23

(citation omitted); *see also Friends of Animals v. Pendley*, 523 F. Supp. 3d 39, 62 (D.D.C. 2021)

(holding fitness prong not satisfied where "NEPA arguments present 'abstract disagreements

over administrative policies' contingent upon 'future events'" (quotations and citations

omitted)).  Similarly, and as discussed above, many facts—including, crucially, whether

Spaceport Camden will proceed in any form at all—would benefit from factual development.

*See Devia*, 492 F.3d at 424 ("[W]hen an agency decision may never have 'its effects felt in a

concrete way by the challenging parties,' the prospect of entangling ourselves in a challenge to

such a decision is an element of the fitness determination as well." (quoting *Abbott Labs*, 387

U.S. at 148-49)).  Indeed, even if the Spaceport project moves forward under a different property

control structure, such as a lease or use agreement, it is unknown whether the County would

succeed in attracting a launch vehicle operator to use the Spaceport, and whether that operator

would, in turn, be able to obtain an FAA license for a suitable launch vehicle.  *See supra* note 7.

And as to the hardship prong, the uncertainty surrounding the progress of Spaceport

Camden eliminates the possibility of any concrete, imminent harm to Plaintiffs.  *See supra* pages

8-9.  Here too, the uncertain timing of the project alone makes Plaintiffs' claims prudentially

unripe.  *Gulf Restoration Network, Inc. v. Nat'l Marine Fisheries Serv.*, 730 F. Supp. 2d 157, 170

(D.D.C. 2010) (noting that the "present setting . . . is not sufficiently concrete because not only

has injury not yet occurred, but future injury is not imminent"); *see also Delta Air Lines, Inc. v.

Export-Import Bank of the U.S.*, 85 F. Supp. 3d 250, 272-73 (D.D.C. 2015) ("If the only hardship

a plaintiff will endure as a result of delaying consideration of the disputed issue is the burden of

having to engage in another suit, this will not suffice to overcome an agency's ripeness

challenge." (citation and quotation omitted)).  And, as noted above, even if Plaintiffs claim that

they will suffer ongoing economic injuries, those injuries stem—by their own allegations—from

the County's decision to pursue the Spaceport in the first instance and can consequently only be remedied by a decision from the County to terminate development, an outcome outside the bounds of this lawsuit.

Courts have consistently found challenges unripe in similar circumstances where factual developments have rendered the completion of a potential project uncertain. *See Devia*, 492 F.3d at 425 (finding claim unripe where "[t]he denials of approval by the [agencies] appear to block the activity—construction and operation of the facility—that petitioners . . . contend will concretely affect them"); *see also City of Fall River v. FERC*, 507 F.3d 1, 7 (1st Cir. 2007) ("A pragmatic view of the facts in this case reveals that it is not ripe for review.  Plainly stated, [the] project may well never go forward because FERC's approval of the project is expressly conditioned on approval by [other agencies]."); *New Hanover Twp. v. U.S. Army Corps of Eng'rs*, 992 F.2d 470, 472-73 (3d. Cir. 1993) (finding claim unripe where, despite Corps issuing permit, landfill project required separate permit from state agency); *Holy Cross Neighborhood Ass'n v. U.S. Army Corps of Eng'rs*, 774 F. Supp. 2d 806, 817 (E.D. La. 2011) (citing cases supporting proposition that "a claim seeking to enjoin government activity is unripe when that activity cannot be practically implemented due to lack of funding").  The Court should find similarly here.

In sum, and for the reasons described above, the Court should find that Plaintiffs' claims are unripe, given the issues are presently not fit for review and no harm will inure to Plaintiffs from withholding review until the factual circumstances surrounding Spaceport Camden are more developed.

**CONCLUSION**

For the foregoing reasons, the Court should find that Plaintiffs lack standing because their claims are constitutionally and prudentially unripe and dismiss their claims without prejudice for lack of jurisdiction.

Respectfully submitted this 25th day of August, 2023.

<div style="margin-left: 50%;">

TODD KIM
Assistant Attorney General

*/s/ Gregory M. Cumming*
Gregory M. Cumming
Matthew P. Rand
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M St., N.E.
Washington, D.C. 20002
(202) 598-0414 (phone)
gregory.cumming@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St., NW
Washington, D.C. 20005
Tel. (202) 514-1955
Joseph.Borson@usdoj.gov

*Counsel for Defendants*

</div>